UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FILED IN OPEN COURT
6·20·13
CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES OF AMERICA        :
                                :
              v.                :CASE NO. 3:12-cr-157-J-99MMH-MCR
                                :CASE NO. 7:13-cr-8-HL (MDGA)
EDDIE BATTLES                   :   3:13Cr-83-J-99mnH-JRF

## PLEA AGREEMENT

A.    **Particularized Terms**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

ROBERT E. O'NEILL, United States Attorney for the Middle District of Florida,

and the defendant, EDDIE BATTLES, and the attorney for the defendant,

VANESSA NEWTSON, mutually agree as follows:

1.    Count(s) Pleading To

In Case Number 3:12-cr-157-J-99MMH-MCR, the defendant shall

enter a plea of guilty to Counts One, Two, Three, Four, Five, Seven, Nine, Ten

and Eleven of the Indictment.  Counts One, Three, Five, Seven, Nine, Ten and

Eleven charge the defendant with robbery affecting commerce and aiding and

abetting robbery affecting commerce, in violation of Title 18, United States Code,

Sections 1951(a) and 2.  Counts Two and Four charge the defendant with

brandishing a firearm in furtherance of a crime of violence, in violation of Title 18,

United States Code, Section 924(c).

Defendant's Initials _____                    AF Approval _____

The defendant, pursuant to Rule 20(a) of the Federal Rules of Criminal Procedure, re-affirms his previously stated wish to plead guilty and waive trial in the Middle District of Georgia, in Case Number 7:13-cr-8-HL, where an Information is pending, and consents to dispose of that case in the Middle District of Florida, where the defendant shall enter a plea of guilty to Counts One, Two, Three and Four of the Information, which charge the defendant with robbery affecting commerce, in violation of Title 18, United States Code, Section 1951(a).

2.    <u>Maximum Penalties</u>

In Case Number 3:12-cr-157-J-99MMH-MCR, Counts One, Three, Five, Seven, Nine, Ten and Eleven, and in Case Number 7:13-cr-8-HL, Counts One, Two, Three and Four, each carries a maximum sentence of not more than 20 years imprisonment, a fine of not more than $250,000, or both imprisonment and fine, a term of supervised release of not more that 3 years, and a mandatory special assessment of $100, said special assessment to be due on the date of sentencing.  A violation of the terms and conditions of supervised release carries a sentence of not more than 2 years imprisonment as well as the possibility of an additional term of supervised release.

In Case Number 3:12-cr-157-J-99MMH-MCR, Count Two is punishable by a mandatory minimum term of imprisonment of 7 years up to life, the term of imprisonment must be served consecutively to any other sentence, a fine of not more than $250,000, or both imprisonment and fine, a term of

Defendant's Initials                       2

supervised release of not more than 5 years, and a mandatory special assessment of $100, said special assessment to be due on the date of sentencing. A violation of the terms and conditions of supervised release carries a sentence of not more than 5 years imprisonment as well as the possibility of an additional term of supervised release.

In Case Number 3:12-cr-157-J-99MMH-MCR, Count Four is punishable by a mandatory minimum term of imprisonment of 25 years up to life, the term of imprisonment must be served consecutively to any other sentence, a fine of not more than $250,000, or both imprisonment and fine, a term of supervised release of not more than 5 years, and a mandatory special assessment of $100, said special assessment to be due on the date of sentencing. A violation of the terms and conditions of supervised release carries a sentence of not more than 5 years imprisonment as well as the possibility of an additional term of supervised release.

The cumulative maximum penalty for both cases, all counts, is a mandatory minimum term of imprisonment of 32 years, up to life plus 220 years imprisonment, a fine of not more than $3,250,000, or both imprisonment and fine, a term of supervised release of not more than 43 years, and a mandatory special assessment of $1,300, said special assessment to be due on the date of sentencing. A violation of the terms and conditions of supervised release carries a sentence of not more than 32 years imprisonment as well as the possibility of an additional term of supervised release.

Defendant's Initials                 3

3.    Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.

The elements of an offense in violation of Title 18 United States Code Sections 1951(a), Counts One and Three in Case Number 3:12-cr-157-J-99MMH-MCR, and Counts One, Two, Three and Four in Case Number 7:13-cr-8-HL, are:

| | |
|---|---|
| First: | That the Defendant knowingly acquired someone else's personal property; |
| Second: | That the Defendant took the property against the victim's will by using actual or threatened force, or violence, or fear of harm; and |
| Third: | That the Defendant's actions obstructed, delayed or affected interstate commerce. |

The elements of an offense in violation of Title 18 United States Code Sections 1951(a) and 2, Counts Five, Seven, Nine, Ten and Eleven in Case Number 3:12-cr-157-J-99MMH-MCR, are:

| | |
|---|---|
| First: | That the Defendant knowingly acquired and aided and abetted another who acquired someone else's personal property; |
| Second: | That the Defendant aided and abetted another who took the property against the victim's will by using actual or threatened force, or violence, or fear of harm; and |

Defendant's Initials                     4

<table>
<tr><td><u>Third</u>:</td><td>That the Defendant's actions and the actions of another the Defendant aided and abetted, obstructed, delayed or affected interstate commerce.</td></tr>
</table>

The elements of an offense in violation of Title 18, United States Code, Section 924(c), Counts Two and Four in Case Number 3:12-cr-157-J-99MMH-MCR, are:

<table>
<tr><td><u>First</u>:</td><td>That the defendant committed the crime of violence charged in Counts One and Three of the Indictment;</td></tr>
<tr><td><u>Second</u>:</td><td>That during the commission of those offenses the defendant knowingly possessed and brandished a firearm; and</td></tr>
<tr><td><u>Third</u>:</td><td>That the defendant possessed and brandished the firearm in furtherance of the crime of violence.</td></tr>
</table>

4.    <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

5.    <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. §§ 3663A(a) and (b), defendant agrees to make full restitution to Dollar General and Family Dollar.

Defendant's Initials                 5

6.   <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will -recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant complies with the provisions of USSG §3E1.1(b), the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7.   <u>Cooperation - Substantial Assistance to be Considered</u>

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and

Defendant's Initials _____   6

complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials          7

8.    <u>Use of Information - Section 1B1.8</u>

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

9.    <u>Cooperation - Responsibilities of Parties</u>

a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

Defendant's Initials                     8

(1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

Defendant's Initials  _____                    9

(3)    The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)    The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)    The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

10.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and 28 U.S.C. § 2461(c), and/or Title 18, United States Code Section 924(d) and Title 28, United States Code, Section 2461(c), whether in the possession or

Defendant's Initials _____    10

control of the United States or in the possession or control of the defendant or defendant's nominees.  The assets to be forfeited specifically include, but are not limited to, the following:[1]

> a money judgment in the amount of $17,320.00,[2] representing the amount of proceeds obtained as a result of the offenses for which the defendant is pleading guilty; the defendant is jointly and severally liable with co-defendant Eric Kevontay Williams for $2,986.00 of this sum.

The defendant further herein consents to the filing of a motion by the United States for immediate entry of a Forfeiture Money Judgment.

The defendant also hereby agrees to waive all constitutional, statutory and procedural challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the

---

[1] On May 7, 2013, the Hi-Point C9 Pistol, Cal: 9, Serial Number P1549261, and the 9 rounds Federal ammunition, Cal: 9, specified in the forfeiture allegations of the Indictment (Case No. 3:12-cr-167-J-99MMH-MCR), were administratively forfeited by the Bureau of Alcohol, Tobacco & Firearms.

[2] The sum of $8,216.00 represents the amount of proceeds obtained in Case No. 3:12-cr-157-J-99MMH-MCR (MDFL).  The sum of $9,104.00 represents the amount of proceeds obtained in Case No. 7:13-cr-8-HL (MDGA).

Defendant's Initials _____         11

forfeiture of the property sought by the government.  Pursuant to the provisions of Rule 32.2(b)(1)(A), the United States and the defendant request that promptly after accepting this Plea Agreement, the Court make a determination that the government has established the amount of the proceeds of the offense to which defendant is pleading guilty is $17,320.00 and enter an order of forfeiture. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees that the United States shall, at its option, be entitled to the forfeiture of any property (substitute assets) of the defendant up to the value of the money judgment.  The Court shall retain jurisdiction to settle any disputes arising from application of this clause.  The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing.  The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.  The defendant agrees that

Defendant's Initials _____          12

Federal Rule of Criminal Procedure 11 and U.S.S.G. § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of his cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

**B.**     **Standard Terms and Conditions**

    1.     Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the

Defendant's Initials _(CB)_                   13

United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing.

The defendant understands that this agreement imposes no limitation as to fine.

### 2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

### 3.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or

Defendant's Initials           14

inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

4. <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.  The defendant promises that his/her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he/she has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party.  The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly

Defendant's Initials _____      15

authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

     5.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

Defendant's Initials           16

6.     <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

7.     <u>Middle District of Florida Agreement</u>[3]

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and the Office of the United States Attorney for the Middle District of Georgia and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

---

[3]Modified to include the Middle District of Georgia

Defendant's Initials _____       17

8.     Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

9.     Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial.  The defendant further understands that if

Defendant's Initials _____          18

defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

10. <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

11. <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _____          19

12.  Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___11___ day of ~~May~~ June, 2013.

ROBERT E. O'NEILL
United States Attorney

EDDIE BATTLES
Defendant

By: _____
FRANK TALBOT
Assistant United States Attorney

VANESSA NEWTSON
Attorney for Defendant

MAC D. HEAVENER, III
Assistant United States Attorney
Deputy Chief, Jacksonville Division

Defendant's Initials _____      20

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                         Case No. 3:12-cr-157-J-99MMH-MCR
                                           Case No. 7:13-cr-8-HL (MDGA)
EDDIE BATTLES

_____

## PERSONALIZATION OF ELEMENTS

### Case No. 3:12-cr-157-J-99MMH-MCR

### COUNT ONE

1.     On or about December 2, 2011, in Hamilton County, in the Middle District of Florida, did you knowingly rob employees of the Dollar General store in White Springs, of approximately $4,020 that belonged to Dollar General?

2.     Did you take the money against the will of the employees by threat of force and fear of injury?

3.     Did your actions obstruct, delay or affect interstate commerce?

### COUNT TWO

1.     On or about December 2, 2011, in Hamilton County, in the Middle District of Florida, did you knowingly rob the Dollar General store, as charged in Count One of the Indictment?

2.     During the robbery, did you knowingly possess and brandish a firearm?

Defendant's Initials  ____          21

3.    Did you possess and brandish the firearm in furtherance of the robbery charged in Count One of the Indictment?

## COUNT THREE

1.    On or about December 12, 2011, in Hamilton County, in the Middle District of Florida, did you knowingly rob employees of the Dollar General store in Jasper, of approximately $1,210 that belonged to Dollar General?

2.    Did you take the money against the will of the employees by threat of force and fear of injury?

3.    Did your actions obstruct, delay or affect interstate commerce?

## COUNT FOUR

1.    On or about December 12, 2011, in Hamilton County, in the Middle District of Florida, did you knowingly rob the Dollar General store, as charged in Count Three of the Indictment?

2.    During the robbery, did you knowingly possess and brandish a firearm?

3.    Did you possess and brandish the firearm in furtherance of the robbery charged in Count Three of the Indictment?

## COUNT FIVE

1.    On or about March 27, 2012, in Hamilton County, in the Middle District of Florida, did you knowingly aid and abet ERIC WILLIAMS in the robbery of employees of the Dollar General store in White Springs, of approximately $800 that belonged to Dollar General?

Defendant's Initials _SB_                    22

2.    Did you and ERIC WILLIAMS take the money against the will of the employees by threat of force and fear of injury?

3.    Did your actions and those of ERIC WILLIAMS obstruct, delay or affect interstate commerce?

## COUNT SEVEN

1.    On or about April 2, 2012, in Suwannee County, in the Middle District of Florida, did you knowingly aid and abet ERIC WILLIAMS in the robbery of an employee of the Family Dollar store in Live Oak, of approximately $486 that belonged to Family Dollar?

2.    Did you and ERIC WILLIAMS take the money against the will of the employee by threat of force and fear of injury?

3.    Did your actions and those of ERIC WILLIAMS obstruct, delay or affect interstate commerce?

## COUNT NINE

1.    On or about April 5, 2012, in Duval County, in the Middle District of Florida, did you knowingly aid and abet ERIC WILLIAMS in the robbery of employees of a Dollar General store in Jacksonville, of approximately $1,200 that belonged to Dollar General?

2.    Did you and ERIC WILLIAMS take the money against the will of the employees by threat of force and fear of injury?

3.    Did your actions and those of ERIC WILLIAMS obstruct, delay or affect interstate commerce?

Defendant's Initials                 23

## COUNT TEN

1.    On or about April 15, 2012, in Duval County, in the Middle District of Florida, did you knowingly aid and abet ERIC WILLIAMS in the robbery of employees of a Dollar General store in Jacksonville, of approximately $500 that belonged to Dollar General?

2.    Did you and ERIC WILLIAMS take the money against the will of the employees by threat of force and fear of injury?

3.    Did your actions and those of ERIC WILLIAMS obstruct, delay or affect interstate commerce?

## COUNT ELEVEN

1.    On or about April 18, 2012, in Suwannee County, in the Middle District of Florida, did you knowingly aid and abet ERIC WILLIAMS in the robbery of employees of the Dollar General store in Welborn, of approximately $1,237 that belonged to Dollar General?

2.    Did you and ERIC WILLIAMS take the money against the will of the employees by threat of force and fear of injury?

3.    Did your actions and those of ERIC WILLIAMS obstruct, delay or affect interstate commerce?

Defendant's Initials _EB_                    24

## Case No. 7:13-cr-8-HL (MDGA)

## COUNT ONE

1.    On or about November 28, 2011, in Lake Park, in the Middle District of Georgia, did you knowingly rob employees of the Dollar General store in Lake Park, of approximately $2,844 that belonged to Dollar General?

2.    Did you take the money against the will of the employees by threat of force and fear of injury?

3.    Did your actions obstruct, delay or affect interstate commerce?

## COUNT TWO

1.    On or about December 30, 2011, in Valdosta, in the Middle District of Georgia, did you knowingly rob employees of the Dollar General store in Valdosta, of approximately $941 that belonged to Dollar General?

2.    Did you take the money against the will of the employees by threat of force and fear of injury?

3.    Did your actions obstruct, delay or affect interstate commerce?

## COUNT THREE

1.    On or about January 11, 2012, in Homerville, in the Middle District of Georgia, did you knowingly rob employees of the Dollar General store in Homerville, of approximately $4,736 that belonged to Dollar General?

2.    Did you take the money against the will of the employees by threat of force and fear of injury?

3.    Did your actions obstruct, delay or affect interstate commerce?

Defendant's Initials           25

## COUNT FOUR

1.    On or about January 29, 2012, in Lake Park, in the Middle District of Georgia, did you knowingly rob employees of the Dollar General store in Lake Park, of approximately $583 that belonged to Dollar General?

2.    Did you take the money against the will of the employees by threat of force and fear of injury?

3.    Did your actions obstruct, delay or affect interstate commerce?

Defendant's Initials

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No. 3:12-cr-157-J-99MMH-MCR
                                                      Case No. 7:13-cr-8-HL (MDGA)
EDDIE BATTLES

## FACTUAL BASIS

On November 28, 2011, in Lake Park, Georgia, Eddie BATTLES entered the Dollar General near closing time. There was one female clerk present. BATTLES demanded money from the clerk and robbed the store of approximately $2,844 from the store safe. BATTLES held a loaded 9mm pistol during the robbery. BATTLES fled the store with the money after the robbery.

On December 2, 2011 in White Springs, Florida, in Hamilton County, Eddie BATTLES entered the Dollar General store near closing time. BATTLES brandished a loaded 9mm pistol as he demanded money from the two employees who were working that evening. The employees gathered approximately $4,020 from the cash registers and the store safe and handed it to BATTLES. BATTLES fled the store with the money after the robbery.

On December 12, 2011 in Jasper, Florida, in Hamilton County, BATTLES entered the Dollar General store near closing time. BATTLES brandished a 9mm pistol and demanded money from the two employees who were working that evening. The employees gathered approximately $ 1,210

Defendant's Initials                     2

from the store safe and handed it to BATTLES.  BATTLES fled the store with the money after the robbery.

On December 30, 2011 in Valdosta, Georgia, BATTLES entered the Dollar General near closing time.  There were two employees present.  BATTLES demanded money from the employees and robbed the store of approximately $941 from the store safe.  BATTLES held a loaded 9mm pistol during the robbery.  BATTLES fled the store with the money after the robbery.

On January 11, 2012 in Homerville, Georgia, BATTLES entered a Dollar General near closing time.  There were two employees present.  BATTLES demanded money from the employees and robbed the store of approximately $4,736 from the store safe.  BATTLES held a loaded 9mm pistol during the robbery.  BATTLES fled the store with the money after the robbery.

On January 29, 2012 in Lake Park, Georgia, BATTLES entered the Lake Park Dollar General in the morning.  BATTLES did not actually carry a firearm on this occasion, instead he placed his hand in his shirt pretending he had a firearm.  BATTLES demanded money from a store employee and robbed the store of $583 from a cash register.  BATTLES fled the store with the money after the robbery.

On March 27, 2012, BATTLES drove Eric WILLIAMS, to the Dollar General in White Springs, Florida, in Hamilton County.  BATTLES told WILLIAMS that he would meet him at a nearby store after the robbery.  BATTLES also ~~instructed~~ gave WILLIAMS on how to commit the robbery, ~~and gave~~ pointers

Defendant's Initials ⟨EB⟩                3                EB
                                                         r-2N

*used* *that* *belonged to BATTLES*

WILLIAMS a loaded 9mm pistol to use during the robbery. WILLIAMS entered the Dollar General store around 9:00 p.m. and brandished the pistol. WILLIAMS demanded money from the two employees who were working that evening. The employees gathered money from the registers and put the money into a plastic shopping bag and then handed the bag to WILLIAMS. WILLIAMS fled the store and eventually met up with BATTLES. BATTLES and WILLIAMS evenly divided the money taken during the robbery. The total amount of money taken during the robbery was approximately $800.

On April 2, 2012, BATTLES drove WILLIAMS, to the Family Dollar store in Live Oak, Florida, in Suwannee County. BATTLES and WILLIAMS entered the store together shortly after 8:00 a.m.. BATTLES carried a knife and WILLIAMS carried a 9mm pistol. WILLIAMS brandished the pistol and demanded money from an employee. The employee took money from a register and the store safe and handed it to WILLIAMS. BATTLES and WILLIAMS fled the store with the money after the robbery and later divided it between the two of them. The total amount of money taken during the robbery was approximately $486.

On April 5, 2012, BATTLES drove WILLIAMS, to a Dollar General store on New Kings Road in Jacksonville. BATTLES and WILLIAMS entered the store together shortly after 9:00 p.m.. BATTLES carried a knife and WILLIAMS carried a 9mm pistol. WILLIAMS brandished the pistol and demanded money from an employee. The employee took money from a register and placed it into

Defendant's Initials _EB_                    4

a shopping bag and handed the bag to WILLIAMS. BATTLES and WILLIAMS waited for ten minutes while an employee opened the safe. WILLIAMS told an employee to tell customers that approached the store that they were already closed. BATTLES and WILLIAMS fled the store with the money after the robbery and later divided it between the two of them. The total amount of money taken during the robbery was approximately $1,200.

On April 15, 2012, BATTLES, WILLIAMS and a juvenile male (JM) drove to the Dollar General store located on Edgewood Avenue in Jacksonville. WILLIAMS entered the Dollar General carrying a shotgun and JM entered the store to assist in the robbery. BATTLES waited in his car. WILLIAMS took approximately $500 from the store registers. After getting the money, WILLIAMS and JM ordered the employees and customers in the back of the store. WILLIAMS and JM left the store and got into BATTLES car. The group then fled the area. BATTLES, WILLIAMS and JM later divided the proceeds of the robbery amongst themselves.

On April 18, 2012 BATTLES, WILLIAMS and a juvenile male (JM) drove to the Dollar General store located in Welborn, Florida. BATTLES waited in the car while WILLIAMS and JM robbed the Dollar General. WILLIAMS carried a 9mm pistol during the robbery. There were two employees present. WILLIAMS demanded money from the employees and robbed the store of approximately $1,236 from the registers and the store safe. WILLIAMS forced

Defendant's Initials             5

the store employees and customers to the back of the store before he and JM

fled the store.  BATTLES drove WILLIAMS and JM away from the store.

A witness was able to give a car description to police and a BOLO was

put out for BATTLES' car.  Hamilton County Deputies spotted the car and

conducted a traffic stop on I-75 North in Hamilton County.  BATTLES was driving

and WILLIAMS was in the front passenger seat.  JM was in the rear passenger

seat.  Deputies recovered a Hi-Point 9mm pistol, Serial Number P1549261,

loaded with 9 rounds of Federal ammunition.  The firearm belonged to

BATTLES.  Deputies also recovered the $1,236 taken during the robbery.

On May 16, 2012, BATTLES was interviewed by ATF Special Agents

Jeff Massey and Ryan Miller at the Suwannee County Jail.  BATTLES was read

his Miranda warnings and confessed to the robberies as outlined above.

BATTLES admitted that the Hi-Point 9mm pistol was the one he or WILLIAMS

used during the robberies.

Dollar General operates over 10,000 retail stores in 40 states.  Dollar General

is headquartered in Goodlettsville, Tennessee.  Dollar General offers products

for sale that are manufactured and transported from multiple locations inside and

outside the United States.  Dollar General is a publically traded company listed

on the New York Stock Exchange.  Dollar General's annual sales are over 14

billion dollars.

Family Dollar operates over 7,000 retail stores in 44 states.  Family Dollar is

headquartered in Charlotte, North Carolina.  Family Dollar offers products for

Defendant's Initials _____          6

sale that are manufactured and transported from multiple locations inside and outside the United States. Family Dollar is a publically traded company listed on the New York Stock Exchange. Family Dollar's annual sales are over 8 billion dollars.

Dollar General and Family Dollar are not franchises and all merchandise and currency of each retail store is the property of the companies themselves. The money stolen from Dollar General and Family Dollar was the property of the companies and would have been used to further the operations of each multibillion dollar business that affects interstate commerce. The Dollar General and Family Dollar stores that were involved in these robberies had operations disrupted by the robberies. Customers inside the stores were unable to complete their transactions and all stores were closed for a period of time after the robberies which further disrupted their ability to conduct business which affected interstate commerce.

Defendant's Initials _____     7